[No. 30698.   Department One.   February 28, 1949.]

ED HOOVER, *Respondent,* v. R. W. THOMPSON, *Appellant.*[1]

*Cosgrove, Terhune & Schlosstein,* for appellant.

*Eugene H. Knapp,* for respondent.

BEALS, J.—In his complaint in this action the plaintiff, Ed Hoover, alleged that, October 31, 1946, at about 4:30 p. m., the day being clear, he was driving his automobile in an easterly direction along a public road, extending west from highway 99 in King county, to the Bow Lake airport; that the defendant, R. W. Thompson, was driving an automobile in a westerly direction along the same road and carelessly and negligently so operated the car which he was driving as to collide with the plaintiff's automobile, damaging plaintiff's car to the extent of three hundred twenty-five dollars.

Plaintiff alleged that defendant was negligent in failing to keep his car under control, in failing to yield the right of way to plaintiff, and in operating his car at a high and dangerous rate of speed, in excess of forty miles per hour,

[1]Reported in 203 P. (2d) 347.

and by driving to his left of the center line of the road. Plaintiff demanded judgment for the amount referred to.

By his answer, the defendant admitted that a collision between the two cars occurred, but denied all other material allegations in the complaint. By way of an affirmative defense, the defendant alleged that he was driving his car in a westerly direction on a one-way road extending between the highway and the airport, that the road was maintained for traffic moving west, and that the plaintiff was unlawfully using the road to drive his car in an easterly direction thereon. Defendant further alleged that, as the result of the collision, his car was damaged to the extent of two hundred fifty dollars, for which he demanded judgment.

Plaintiff filed his reply to the affirmative defense, denying the affirmative allegations of the answer.

The action was tried to the court, sitting without a jury. The court, after hearing the evidence, entered findings of fact and conclusions of law in favor of the plaintiff, followed by a judgment, in the amount of three hundred twenty-five dollars, in plaintiff's favor, from which the defendant has appealed.

Appellant assigns error upon the refusal of the trial court to find that respondent was guilty of contributory negligence, upon the trial court's finding that the accident was due to appellant's negligence, upon the entry of the judgment in respondent's favor, and upon the refusal of the trial court to enter judgment in appellant's favor on his cross-complaint.

Respondent testified that he had been working at the Bow Lake airport for several months prior to the accident. At that time, the airport was not completely finished, and was used much less than after it was completed. The airport was located some distance west of the highway, and there was a paved road leading to the airport from the highway. A short distance to the west of the highway, this road forked, one portion curving into the highway toward the north and the other toward the south. A small, very

crude, penciled sketch of the roads was marked as an exhibit, but no distances are indicated thereon, nor are the widths of the roads indicated.

On the afternoon in question, between four-thirty and five o'clock, respondent, accompanied by John Carlson, left the airport after completing his day's work. He drove east along the road leading to the highway and, when he reached the fork in that road, turned north along that curve toward the highway. The length of this curve is not indicated on the map, nor referred to in the evidence.

At the same time, appellant was driving his 1935 Ford car south along highway 99, intending to proceed to the airport in connection with his business as transportation agent for Northwest Airlines. Appellant turned west onto the northerly fork of the road leading into the airport, and the two cars collided, resulting in the accident which is the basis of this action.

At that time, the curve to the north was not marked as a one-way road from the airport. Later, when the airport was more advanced, the north curve was marked for ingress to the airport, and the southerly fork of the road for egress. As a result of the accident, respondent's car was damaged to the extent of three hundred twenty-five dollars, and appellant's car to the extent of two hundred fifty dollars.

Respondent testified that, just prior to the collision, he was proceeding on his right-hand side of the road and was about one hundred feet, or a little farther, from the Pacific highway when appellant turned into the airport road. The left front of appellant's car struck the left front of respondent's car. Respondent testified that he saw appellant's car approaching and slowed down, with the result that his car was scarcely moving at the instant of the collision. Respondent further stated that, after the accident, appellant, who had turned toward the west, said that the sun had blinded him when he made the turn. Respondent also testified that appellant was driving rather rapidly and, after the accident, said that he was late for work.

Respondent also testified that there were two cars just ahead of him, proceeding along the same road.

John Carlson, who was riding with respondent sitting beside him in the car, testified that he was also employed at the airport; that, at the time of the accident, the weather was clear and the road dry, that several cars preceded respondent along the same road. The witness also testified that appellant was driving quite rapidly, and that respondent slowed his car on the right-hand side of the road just prior to the collision. The witness further testified that, at the time of the accident, the road was not marked as a one-way road, and that it was quite generally used by persons leaving the airport intending to proceed north along the Pacific highway.

Appellant, testifying on his own behalf, stated that, for some time prior to the collision, in connection with his business, he had visited the airport about once a week; that he was driving south on the highway and made a right-hand turn to the west to visit the airport. The witness saw no other traffic prior to the collision. He testified that there was another curve to the south, to be used by cars leaving the airport for the highway.

On cross-examination, appellant testified that there was nothing to obstruct his view to his right of and along the road leading to the airport, and that he first saw respondent's car "just before the curve here. . . . I can't tell you exactly. It was roughly, maybe, 75 to 150 feet." He also testified, in response to the question as to when he first saw respondent's car:

"It was approximately around the corner, and I knew he was on the wrong side of the road there, and I thought we was going to miss each other. That highway there is not a two-lane highway. There's just about enough room for two cars to pass each other."

During the cross-examination, the following occurred:

"Q. While you were proceeding down here, even while you were back on the highway he was in your view all of the way? A. Yes. Q. If you had looked, you could easily see him? A. Yes. Q. But you didn't see him until you actually got to here? A. That's correct."

Later, on cross-examination, appellant testified that, to his knowledge, at the time of the accident, there were no signs indicating that the road upon which the collision occurred, was a one-way road.

Respondent's counsel asked appellant the following question: "And traffic very generally did use it both ways a year and a half ago, conditions were much different than they are today?" to which appellant answered, "Yes, sir."

Appellant also testified that, while the roads had not been changed since the date of the accident, many "islands" and white chalk curbs had thereafter been installed for the guidance of traffic.

James L. Bush, called by appellant as a witness, testified that, on the afternoon of the accident, he was driving a gas truck south along the highway, that appellant's car had passed the witness, and that the witness saw the accident. He also stated that he was proceeding to the airport and drove into the road upon which the collision had occurred and passed the damaged cars by driving his truck partially off the pavement. The witness testified that he saw no cars ahead of respondent's car, and that the curved portion of the road leading to the highway was not generally used by cars moving from the airport.

In response to a question by the court, the witness stated that, during October, 1946, there were no signs directing traffic along the roads leading from the airport to the highway.

On cross-examination, in response to the following question, "And which is the time of this accident, these improvements in the entrance there had not been in, and there was no posting on those streets, was there?" the witness answered, "No."

The testimony, as disclosed by the statement of facts, is, in many particulars, very unsatisfactory. The witnesses would use the words "here," and "there," "this way," "over here on this island," the record containing nothing which explains the expressions used. Probably the witnesses referred to the crude sketch of the scene of the accident, which enabled their testimony to be understood by the

trial court, but not by one reading the record. The only mark on the exhibit is a cross which appellant testified indicated the place on the road where the cars collided.

Appellant testified that the pavement was wide enough to enable two cars to pass each other in safety. Each car was perfectly visible to the driver of the other car. The day was clear and, of course, it is admitted that appellant turned to the west, thereby facing the sun. Respondent's car was in plain view of appellant prior to the time the latter turned into the road to the west. Respondent, of course, would not be concerned with appellant's car until the latter made that turn.

The trial court found that respondent was driving in a lawful, cautious, and careful manner, and that appellant drove his automobile recklessly, carelessly, and negligently, that appellant's negligence consisted in his failure to keep a proper lookout and to keep his car under control, also in failing to take any steps to avoid the collision, and that appellant's negligence was the sole proximate cause of the collision and the resulting damage to respondent's car.

The trial court concluded that respondent was entitled to judgment and entered judgment accordingly.

The evidence clearly shows that, at the time of the accident, the curve to the north in the road from the airport to the highway was not marked as a one-way road for traffic from the highway to the west.

The decision to be rendered by the trial court depended entirely upon the court's estimate of the facts as disclosed by the evidence. The trial court had the advantage of seeing and hearing the witnesses, and the record before us supports the conclusion reached by the trial court.

The judgment appealed from is accordingly affirmed.

JEFFERS, C. J., STEINERT, MALLERY, and HILL, JJ., concur.